**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| BILL JENKINS, derivatively on behalf of REVOLUTION LIGHTING TECHNOLOGIES, INC., | C.A. No. _____ |
| Plaintiff, | |
| vs. | DEMAND FOR JURY TRIAL |
| ROBERT V. LAPENTA, CHARLES J. SCHAFER, JAMES A. DEPALMA, ROBERT A. BASIL, WILLIAM D. INGRAM, ROBERT V. LAPENTA, JR., DENNIS MCCARTHY, and STEVEN G. VIRTUE, | |
| Defendants, | |
| and | |
| REVOLUTION LIGHTING TECHNOLOGIES, INC., | |
| Nominal Defendant. | |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## INTRODUCTION

Plaintiff Bill Jenkins ("Plaintiff"), by his undersigned attorneys, derivatively and on behalf of Nominal Defendant Revolution Lighting Technologies, Inc. ("Revolution Lighting" or the "Company"), files this Verified Shareholder Derivative Complaint against Individual Defendants Robert V. LaPenta, Charles J. Schafer, James A. DePalma, Robert A. Basil, William D. Ingram, Robert V. LaPenta, Jr., Dennis McCarthy, and Steven G. Virtue (collectively, the "Individual Defendants," and together with Revolution Lighting, the "Defendants") for breaches of their fiduciary duties as directors and/or officers of Revolution Lighting, unjust enrichment, waste of corporate assets, and violations of Sections 14(a) of the Securities Exchange Act of 1934 (the

"Exchange Act"). As for his complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to himself and him own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls, and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Revolution Lighting, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action that seeks to remedy wrongdoing committed by Revolution Lighting's directors and officers from March 14, 2014 through the present (the "Relevant Period").

2.      Revolution Lighting designs, manufactures, markets, and sells light-emitting diode ("LED") lighting solutions for various usages to industrial, commercial, and government markets.

3.      The Company generates revenue through its sales of lighting products across global markets. Revolution Lighting markets and distributes its products through networks of electrical distributors and supply companies, contractors, energy service companies, sales agencies, and through its own internal marketing and direct sales force.

4.      In September 2012, the Company underwent a change of control pursuant to an investment agreement  (the "Investment Agreement") entered into between Revolution Lighting and an investment management company, RVL 1 LLC ("RVL"), an affiliate of Aston Capital,

LLC ("Aston"), a private equity firm which specializes in investing in middle market growth areas including LED technology.

5.      Per the terms of the Investment Agreement, RVL made a $6 million dollar investment in the Company in exchange for newly created Series B convertible preferred stock, $.001 par value per share, representing 73% of outstanding voting stock and resulting in a change of control whereby Robert V. LaPenta ("LaPenta") was named Chairman and CEO and the Company's name changed to Revolution Lighting Technologies. Inc. In addition, RVL, Defendant LaPenta, and Aston[1] became controlling shareholders of the Company.

6.      Revolution Lighting acquired a number of companies between 2012 and 2016 as part of its growth strategy including Relume Technologies, Inc. ("Relume"), Value Lighting, Inc. ("Value Lighting"), and Energy Source, LLC ("Energy Source").

7.      Beginning in September 2017, the Company began lowering its revenue guidance and reporting lower than expected financial results in its press releases and SEC filings. The price per share of Company stock also started to decline in tandem.

8.      On September 22, 2017, the Company issued a press release announcing updates to its projected third and fourth quarter results and revising its full year guidance due in part to "the slippage of a number of our Energy Source division projects" which negatively impacted the Company.  The press release stated that the Company expected $42-44 million in revenue for the third quarter in contrast to its previous guidance of $52-55 million, and $180-185 million in revenue for the full year in contrast to the Company's prior guidance of $195-205 million.

---

[1] Aston is the managing member of RVL.

Verified Shareholder Derivative Complaint

9.      On this news, the price per share of Revolution Lighting common stock fell $1.32, over 17%, from the previous day's closing price, closing at $6.26 per share on September 22, 2017.[2]

10.      On August 2, 2018, the Company issued a press release announcing its second quarter results for the quarter ended June 30, 2018 and reporting lower than expected revenue due to "project delays."

11.      On this news, the price per share of Revolution Lighting common stock fell $0.53, almost 14%, from the previous day's closing price, to close at $3.37 per share on August 2, 2018, and further declined $0.55, or 18%, over the next two trading sessions to close at $2.82 on August 6, 2018.

12.      On October 17, 2018, the Company issued a press release disclosing preliminary financial results for its fiscal quarter ended September 30, 2018 which it also filed with the SEC on a Form 8-K. The press release announced lower expected revenue of $33 million as opposed to the Company's prior third quarter guidance of $40-41 million tying the decline to continued project delays. The press release also announced that the Company's CEO, Defendant LaPenta, had offered to acquire all the Company's common stock not already owned by him or his affiliates for $2.00 per share and to take the Company private.

13.      On this news, the price per share of Revolution Lighting common stock fell $0.98, over 38%, from the previous day's closing price, to close at $1.58 per share on October 17, 2018.

14.      Further negative news ensued. On October 19, 2018, the Company issued a press release which revealed an ongoing SEC investigation into the Company for certain revenue

_____

[2] All references to the Company's stock price reflect trades on a split-adjusted basis following a one-for-ten reverse stock split which came into effect on March 11, 2016.

recognition practices engaged in by Revolution Lighting from 2014 through 2018. Specifically, the press release divulged:

> [t]here is currently an ongoing investigation by the SEC regarding certain revenue recognition practices, including bill and hold transactions that occurred between 2014 through the second quarter of 2018. . . In connection with the results of the investigation to date, the Company is in the process of assessing its revenue recognition policies and the resulting effects on its financial results, and adopting remedial measures to improve its internal controls as described in its Form 10-Q for the second quarter of 2018.

15.     On this news, the price per share of Revolution Lighting common stock fell $0.16, over 10%, from the previous day's closing price, to close at $1.50 per share on October 22, 2018.

16.     On November 14, 2018, the Company issued a press release announcing that it had received a revised proposal from RVL in connection with the offer to acquire all the Company's shares. The revised proposal included a lowered offer price of $1.50 per share due in part to the SEC investigation and resultant Audit Committee review over the Company's revenue practices related to bill and hold transactions announced by the Company in a Current Report filed with the SEC on November 13, 2018.

17.     On this news, the price per share of Revolution Lighting common stock fell $0.55, almost 40%, from the previous day's closing price, to close at $0.85 per share on November 15, 2018.

18.     The Company's performance and condition has continued on a downward spiral. On March 8, 2019, the Company issued a press release announcing another updated proposal from RVL and Defendant LaPenta in connection with the offer made to the Company in October 2018. The press release included the text of the letter sent by RVL effectively withdrawing its offer.

19.     On March 27, 2019, the Company issued another press release announcing that it had received a notification of deficiency from NASDAQ due to the Company's failure to timely

file its Annual Report on Form 10-K for the fiscal year ended December 31, 2018. The same day, the Company issued another press release providing preliminary revenue estimates for its fourth quarter and full year ended December 31, 2018 and preliminary guidance for 2019. The press release noted the Company's mounting debt and disclosed that the Audit Committee concluded certain of the Company's financial statements should no longer be relied upon.

20.    During the Relevant Period, the Individual Defendants caused the Company to incorrectly disclose Company revenue for certain transactions and to further make false and/or misleading statements concerning the Company's revenue and accounting practices that failed to disclose, *inter alia*, that: (1) Revolution Lighting was improperly recording revenue for certain transactions, primarily bill and hold transactions, at the proper time, rendering the Company's financial statements from 2014 through the second quarter of 2018 false; (2) the Company had deficient internal controls over financial reporting; (3) Revolution Lighting was or would become the subject of an SEC investigation and experience substantial costs, and; (4) the Company failed to maintain internal controls. As a result of the foregoing, Defendants' statements regarding the Company's business, operations, and prospects, were materially false, misleading, and lacked a reasonable basis in fact at all relevant times.

21.    The Individual Defendants also breached their fiduciary duties by failing to correct and/or causing the Company to fail to correct the false and misleading statements and omissions of material fact to the investing public.

22.    Moreover, in breach of their fiduciary duties, the Individual Defendants failed to maintain internal controls and caused the Company's inability to timely file subsequent SEC reports due to resulting internal investigations and financial revisions.

Verified Shareholder Derivative Complaint

23.     In light of the Individual Defendants' misconduct, which has subjected Revolution Lighting, its Chief Executive Officer ("CEO"), its Chief Financial Officer ("CFO"), and its former CFO, to being named as defendants in three federal securities fraud class action lawsuits pending in the United States District Court for the Southern District of New York (the "Securities Class Actions"), the need to undertake internal investigations, the Company's being the subject of internal and outside investigations, including the SEC investigation, the need to implement adequate internal controls over its financial reporting, the losses from the waste of corporate assets, and the losses due to the unjust enrichment of the Individual Defendants who were improperly over-compensated by the Company and/or who benefitted from the wrongdoing alleged herein, the Company will have to expend many millions of dollars.

24.     In light of the breaches of fiduciary duty engaged in by the Individual Defendants, most of whom are the Company's current directors, their collective engagement in fraud, the substantial likelihood of the directors' liability in this derivative action and the CEO's, CFO's, and former CFO's liability in the Securities Class Actions, their being beholden to each other, their longstanding business and personal relationships with each other, and their not being disinterested and/or independent directors, a majority of the Revolution Lighting Board of Directors (the "Board") cannot consider a demand to commence litigation against themselves on behalf of the Company with the requisite level of disinterestedness and independence.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Exchange Act, 15 U.S.C. § 78n, Rule 14a-9 of the Exchange Act, 17 C.F.R. § 240.14a-9.

Verified Shareholder Derivative Complaint

26.     Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Actions based on violations of the Exchange Act.

27.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

28.     Additionally, diversity jurisdiction is conferred by 28 U.S.C. § 1332. Plaintiff and Individual Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

29.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

30.     The Court has personal jurisdiction over each of the Defendants because each Defendant is either a corporation with headquarters in this District, or he or she is an individual who has minimum contacts with this District to justify the exercise of jurisdiction over them.

31.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

32.     Venue is proper in this District because Revolution Lighting and the Individual Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

### Plaintiff

33.     Plaintiff is a current shareholder of Revolution Lighting common stock. Plaintiff has continuously held Revolution Lighting common stock at all relevant times. Plaintiff is a citizen of Arizona.

**Nominal Defendant Revolution Lighting**

34.    Revolution Lighting is a Delaware corporation with its principal executive offices at 177 Broad Street, 12th Floor, Stamford, Connecticut 06901. Revolution Lighting's common stock trades on the NASDAQ Capital Market ("NASDAQ") under the ticker symbol "RVLT."

**Defendant LaPenta**

35.    Defendant LaPenta has served as the Chairman of Revolution Lighting's Board since September 2012 and as the Company's CEO since January 2013. Defendant LaPenta has also served as the Company's President since July 2015. According to the Company's Schedule 14A filed with the SEC on March 22, 2018 (the "2018 Proxy Statement"), as of March 1, 2018, Defendant LaPenta beneficially owned 9,525,386 shares of the Company's common stock, which represented 42.60% of the Company's outstanding stock as of that date. These shares included 8,575,386 shares of common stock beneficially owned by RVL and Aston, in Defendant LaPenta's capacity as an officer and member of RVL and Aston, as well as 950,000 shares of common stock owned directly by him. Given that the price per share of the Company's common stock at the close of trading on March 1, 2018 was $3.39, Defendant LaPenta owned over $32.2 million worth of Revolution Lighting stock.

36.    As the Company admits, Defendant LaPenta has a direct and substantial long-term interest in the growth of the Company as an officer of RVL and Aston, the Company's principal shareholders, and is a beneficial owner of a substantial portion of Revolution Lighting's common stock. For this reason, the Company has not provided Defendant LaPenta with additional compensation in connection with his position as CEO.  Indeed, Defendant LaPenta is intimately connected to the Company both as its CEO, and as the CEO of both RVL and Aston.  Furthermore, Defendant LaPenta is party to a number of transactions with Revolution Lighting. For example,

on January 29, 2018, the Company sold 850,000 shares of its common stock to Defendant LaPenta for $3.60 per share. Defendant LaPenta has also guaranteed certain funding to the Company in connection with the Company's acquisitions.

37.     The Company's 2018 Proxy Statement stated the following about Defendant LaPenta:

> Mr. LaPenta has served as a member of our Board of Directors and as Chairman since September 2012, as our Chief Executive Officer since January 2013 and as our President since July 2015. Mr. LaPenta is also a founder of Aston Capital, LLC ("Aston"), a private investment company specializing in investments in secure military communication companies and companies with green technologies. Mr. LaPenta also served as a member of the Board of Directors of Leap Wireless International, Inc. ("Leap Wireless") from March 2005 until its acquisition by AT&T Corporation in March 2014. From August 2006 to August 2011, Mr. LaPenta served as Chairman, President and Chief Executive Officer of L-1 Identity Solutions, Inc. ("L-1"), a provider of technology solutions for protecting and securing personal identities and assets. From April 1997 to April 2005, Mr. LaPenta served as President and Chief Financial Officer and a director of L-3 Communications (now L-3 Technologies), a company he co-founded in April 1997. Mr. LaPenta received a B.B.A. in accounting from Iona College in New York, and in 2000 he also received an honorary degree from Iona.
>
> Mr. LaPenta was elected to our Board based on his extensive experience managing and developing growth companies as a result of his executive roles at Lockheed Martin Corporation, L-3 Communications Holding and L-1 Identity Solutions, Inc., as well as extensive experience in investment companies. Mr. LaPenta also holds a substantial personal investment in our common stock through RVL and Aston, of which he is a member.

38.     Upon information and belief, Defendant LaPenta is a citizen of Connecticut.

**<u>Defendant Schafer</u>**

39.     Defendant Charles J. Schafer ("Schafer") served as the Company's CFO, President, and member of the Board from January 29, 2013 until his retirement on July 10, 2015. In connection with his appointment, Revolution Lighting agreed to provide Defendant Schafer an annual base salary of $200,000, a target annual bonus of 50% of his base salary, and a grant of 250,000 restricted shares which would vest ratably over three years. According to the Company's

Schedule 14C filed with the SEC on April 20, 2016 (the "2016 Information Statement"), as of March 14, 2016, Defendant Schafer beneficially owned 40,000 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on March 14, 2016 was $7.24, Defendant Schafer owned $289,600 worth of Revolution Lighting stock.

40.     For the fiscal year ended December 31, 2015, Defendant Schafer received $128,462 in compensation from the Company. This included $106,154 in salary and $22,308 in all other compensation.

41.     The Company's Form 8-K filed with the SEC on January 30, 2013 stated the following about Defendant Schafer:

> Mr. Schafer has worked as a consultant to various private equity and venture capital firms in the Aerospace and Defense market, and was formerly the Senior Vice President at L-3 Communications Holdings, Inc., where he also served as the President and Chief Operating Officer of the Products Group. Prior to that, Mr. Schafer was the President of Lockheed Martin's Tactical Defense Systems Division, a position he also held at Loral since September 1994. Prior to the April 1996 acquisition of Loral, Mr. Schafer held various executive positions with Loral, which he joined in 1984. He holds a Bachelor of Science degree from the New York Institute of Technology and a Master of Science degree from Columbia University Graduate School of Business.

42.     Upon information and belief, Defendant Schafer is a citizen of Connecticut.

**Defendant DePalma**

43.     Defendant James A. DePalma ("DePalma") has served as a Company director since September 2012 and as the Company's CFO since July 2015. According to the 2018 Proxy Statement, as of March 1, 2018, Defendant DePalma beneficially owned 8,770,386 shares of the Company's common stock, which represented 39.23% of the Company's outstanding stock as of that date. These shares included 8,575,386 shares of common stock beneficially owned by RVL and Aston, in Defendant DePalma's capacity as an officer and member of RVL and Aston, as well

as 195,000 shares of common stock owned directly by him. Given that the price per share of the Company's common stock at the close of trading on March 1, 2018 was $3.39, Defendant DePalma owned $29.7 million worth of Revolution Lighting stock.

44.     As the Company admits, Defendant DePalma has a direct and substantial long-term interest in the growth of the Company as an officer of RVL and Aston, the Company's principal shareholders and is a beneficial owner of a substantial portion of Revolution Lighting's common stock. For this reason, the Company has not provided Defendant DePalma with additional compensation in connection with his position as CFO other than $2,500 as part of healthcare insurance under the Company's plan. Additionally, Defendant DePalma is party to certain transactions with Revolution Lighting. For example, on January 29, 2018, the Company sold 150,000 shares of its common stock to Defendant DePalma for $3.60 per share.

45.     The Company's 2018 Proxy Statement stated the following about Defendant DePalma:

> Mr. DePalma has served as a member of our Board of Directors since September 2012 and as Chief Financial Officer since July 2015. Mr. DePalma has been the Vice Chairman and Senior Managing Partner of Aston since August 2011. Prior to joining Aston, Mr. DePalma was the Executive Vice President, Chief Financial Officer and Treasurer of L-1. Prior to L-1, Mr. DePalma was a founding partner of L-1 Investment Partners. Prior to the formation of L-1 Investment Partners, Mr. DePalma served as a consultant to L-3 Communications Holdings, Inc. and was Chief Executive Officer of Core Software Technology, a leading software provider to the intelligence community and an equity investment of L-3 Communications Holdings, Inc.

> Mr. DePalma has also held high level executive positions with Westinghouse Electric Corporation, CBS Corporation and Viacom International, including Corporate Vice President of Finance at Westinghouse Electric where he managed Mergers and Acquisitions and implemented the restructuring, reorganizing and integration of a variety of businesses. Prior to joining CBS, Mr. DePalma was a Senior Partner at PricewaterhouseCoopers specializing in Defense and Communications and mergers and acquisitions.

> Mr. DePalma was elected to our Board based on his four decades of operational

and finance experience in the defense and technology industries. Mr. DePalma also holds a substantial personal investment in our common stock through RVL and Aston, of which he is a member. In addition to our Board, Mr. DePalma also served on a number of public and private boards.

46.     Upon information and belief, Defendant DePalma is a citizen of Connecticut.

**Defendant Basil**

47.     Defendant Robert A. Basil, Jr. ("Basil") served as a Company director from September 2012 until May 2017. According to the 2018 Proxy Statement, as of March 1, 2018, Defendant Basil beneficially owned 8,575,386 shares of the Company's common stock in his capacity as a member and officer of RVL and Aston, which represented 38.35% of the Company's outstanding stock as of that date. Given that the price per share of the Company's common stock at the close of trading on March 1, 2018 was $3.39, Defendant Basil owned approximately $29 million worth of Revolution Lighting stock.

48.     As the Company admits, Defendant Basil, as an officer of RVL and a member of Aston, is a beneficial owner of a substantial portion of Revolution Lighting's common stock. For this reason, the Company has not provided Defendant Basil with additional compensation in connection with his position as director. Furthermore, although Defendant Basil stepped down from the Board in May 2017, according to the Company's Schedule 14A filed with the SEC on March 23, 2017 (the "2017 Proxy Statement"), he continued to serve the Company in an advisory capacity through a management services agreement between the Company and Aston. As part of the management service agreement with Aston, the Company issued 50,000 shares of restricted stock to Aston on May 15, 2013, 30,000 shares of restricted stock on April 21, 2014, and 250,000 shares of restricted stock on May 16, 2016 (the "Management Agreement"). The Management Agreement was ratified on January 5, 2017 to memorialize management services Aston had been

providing to the Company since September 2012, including consulting, budgeting, and business development.

49.     The Company's 2016 Information Statement stated the following about Defendant Basil:

> Mr. Basil has served as a member of our Board of Directors since September 2012. He has been a Partner of Aston since its founding in August 2011. His career has been focused on investing in, building and managing companies in the aerospace, defense, and national security industries, deploying over $8 billion of capital. Mr. Basil focuses on investments in the defense and national security sectors for Aston.
>
> Prior to joining Aston, Mr. Basil served as the Vice President of Strategic Planning and Business Operations at L-1, where he was responsible for implementing strategic initiatives and financial matters. The Company was acquired in 2011 by two defense integrators.  The Company was founded and capitalized by L-1 Investment Partners, LLC a private equity firm where Mr. Basil served as the Director of Mergers and Acquisitions. Prior to this, he served as the Corporate Manager of Mergers, Acquisitions, and Corporate Strategy at L-3 Communications, Inc. Mr. Basil began his career as at Deutsche Bank in New York in the bank's Media and Technology Investment Banking Group.  Mr. Basil is a graduate of Georgetown University. Mr. Basil was elected to our Board based on his financial and operational experience. Mr. Basil also holds a substantial personal investment in our common stock through RVL and Aston, of which he is a member.

50.     Upon information and belief, Defendant Basil is a citizen of Connecticut.

**<u>Defendant Ingram</u>**

51.     Defendant William D. Ingram ("Ingram") has served as a Company director since September 2012 and serves as Chair of the Compensation Committee, and as a member of the Audit Committee and the Nominating and Corporate Governance Committee.  According to the 2018 Proxy Statement, as of March 1, 2018, Defendant Ingram beneficially owned 35,058 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on March 1, 2018 was $3.39, Defendant Ingram owned $118, 846 worth of Revolution Lighting stock.

52.     For the fiscal year ended December 31, 2017, Defendant Ingram received $60,000 in compensation from the Company. This included $40,000 in fees earned or cash paid and $20,000 in stock awards.

53.     The Company's 2018 Proxy Statement stated the following about Defendant Ingram:

> Mr. Ingram has served as a member of our Board of Directors since September 2012. Since December 2015, Mr. Ingram has served as the Chief Financial Officer of Avalara, Inc., a cloud-based SaaS company providing compliance solutions to customers worldwide. From April 2015 to December 2015, he served as the interim CFO for Khan Academy, a non-profit educational organization created in 2006 by educator Salman Khan with the aim of providing a free, world-class education for anyone, anywhere. He served as Executive Vice President of Leap Wireless from February 2012 through its acquisition by AT&T in March 2014, overseeing Leap Wireless' spectrum, acquisitions, investments and strategic activities. Mr. Ingram continued to work for AT&T in an interim role assisting with the integration of Leap by AT&T until January 2015. Prior to joining Leap Wireless in 2007, Mr. Ingram served as Vice President and General Manager of AudioCodes, Inc., a telecommunications equipment company, from July 2006 to March 2007. Mr. Ingram served as the President and Chief Executive Officer of Nuera Communications, Inc., a provider of VoIP infrastructure solutions, from September 1996 until it was acquired by AudioCodes, Inc. in July 2006. Mr. Ingram holds a B.A. in economics from Stanford University and an M.B.A. from Harvard Business School. Mr. Ingram was elected to the Board based on his significant leadership experience from his professional experience and services as an executive and board member to other technology companies.

54.     Upon information and belief, Defendant Ingram is a citizen of Washington.

**Defendant LaPenta, Jr.**

55.     Defendant Robert V. LaPenta, Jr. ("LaPenta, Jr."), is Defendant LaPenta's son and served as a Company director from September 2012 until May 2017. According to the 2018 Proxy Statement, as of March 1, 2018, Defendant LaPenta, Jr. beneficially owned 8,575,386 shares of the Company's common stock in his capacity as a member and officer of RVL and Aston, which represented 38.35% of the Company's outstanding stock as of that date. Given that the price per

share of the Company's common stock at the close of trading on March 1, 2018 was $3.39, Defendant LaPenta, Jr. owned approximately $29 million worth of Revolution Lighting stock.

56.     As the Company admits, Defendant LaPenta, Jr., as an officer of RVL and a member and officer of Aston, is a beneficial owner of a substantial portion of Revolution Lighting's common stock. For this reason, the Company has not provided Defendant LaPenta, Jr. with additional compensation in connection with his position as director. Furthermore, although Defendant LaPenta, Jr. stepped down from the Board in May 2017, according to the Company's 2017 Proxy Statement, he continued to serve the Company in an advisory capacity through the Management Agreement.

57.     The Company's 2016 Information Statement stated the following about Defendant LaPenta, Jr.:

> Mr. LaPenta has served as a member of our Board of Directors since September 2012. Mr. LaPenta has been a Partner of Aston since August 2011. Mr. LaPenta has also served as a member of the board of directors of TherapeuticsMD, Inc. since February 2012 and currently serves on its Audit Committee. Mr. LaPenta previously served as Vice President of Mergers and Acquisitions and Corporate Strategy for L-1 from April 2007 to August 2011 where he assisted L-1 senior management in identifying acquisition candidates and investments while assisting in due diligence, structuring, valuation, execution and related financing. Mr. LaPenta graduated in 1991 from Boston College with a B.A. in Accounting and Finance. Robert V. LaPenta Jr. is the son of Robert V. LaPenta. Mr. LaPenta was elected to our Board based on his corporate strategy experience. Mr. LaPenta also holds a substantial personal investment in our common stock through RVL and Aston, of which he is a member.

58.     Upon information and belief, Defendant LaPenta, Jr. is a citizen of New York.

**Defendant McCarthy**

59.     Defendant Dennis McCarthy ("McCarthy") has served as a Company director since September 2012 and serves as Chair of the Audit Committee and as a member of the Compensation Committee and the Nominating and Corporate Governance Committee. According to the 2018

Proxy Statement, as of March 1, 2018, Defendant McCarthy beneficially owned 36,058 shares of the Company's common stock. Given that the price per share of the Company's common stock at the close of trading on March 1, 2018 was $3.39, Defendant McCarthy owned approximately $122,236 worth of Revolution Lighting stock.

60.     For the fiscal year ended December 31, 2017, Defendant McCarthy received $60,000 in compensation from the Company. This included $40,000 in fees earned or cash paid and $20,000 in stock awards.

61.     The Company's 2018 Proxy Statement stated the following about Defendant McCarthy:

> Mr. McCarthy has served as a member of our Board of Directors since September 2012. Mr. McCarthy has been the Financial Director for The Bloomingdale Family Program since 2008 and has served on its board of directors since January 2012. Prior to joining Bloomingdales, Mr. McCarthy spent nearly four decades at PricewaterhouseCoopers from 1968 through 2008, where he led the firm's Global Telecommunications tax practice from 1997 to 2005 in addition to client responsibilities. He has also served as the Chairman of the Parent's Committee at Barnard College from 2004 to 2008 and on the Audit Committee of the Winged Foot Golf Club from 2009 to 2012. Mr. McCarthy holds a B.S. in accounting from Clarkson University and is a CPA. Mr. McCarthy was elected to our Board based on his significant financial and accounting expertise.

62.     Upon information and belief, Defendant McCarthy is a citizen of Connecticut.

**Defendant Virtue**

63.     Defendant Steven G. Virtue ("Virtue") has served as a Company director since September 2012 and serves as Chair of the Nominating and Corporate Governance Committee and as a member of the Audit Committee and the Compensation Committee. According to the 2018 Proxy Statement, as of March 1, 2018, Defendant Virtue beneficially owned 35,058 shares of the Company's common stock. Given that the price per share of the Company's common stock at the

close of trading on March 1, 2018 was $3.39, Defendant Virtue owned 118,846 worth of Revolution Lighting stock.

64.     For the fiscal year ended December 31, 2017, Defendant Virtue received $60,000 in compensation from the Company. This included $40,000 in fees earned or cash paid and $20,000 in stock awards.

65.     The Company's 2018 Proxy Statement stated the following about Defendant Virtue:

> Mr. Virtue has served as a member of our Board of Directors since September 2012. Mr. Virtue is the founder of Kato Consultants, Inc. Kato Consultants, Inc. was founded in July 2012. Mr. Virtue was the Managing Director of Institutional Equity Capital Markets at Miller Tabak & Co., LLC from October 2002 to January 2015. Prior to joining Miller Tabak, Mr. Virtue served as the Director of Institutional Equity Capital Markets at Dain Rousher/Royal Bank of Canada where he covered various hedge funds from April 2000 to October 2002. From March 1998 to April 2000, Mr. Virtue worked at Paine Webber as Vice President of Institutional Equity Capital Markets. Prior to joining Paine Webber, Mr. Virtue worked at Smith Barney as a listed trader in New York from 1995 to 1997. Mr. Virtue holds a B.S. in marketing from Boston College, Carroll School of Management. Mr. Virtue was elected to the Board based on his significant expertise and diverse background and perspective as a result of his executive experience in the financial industry.

66.     Upon information and belief, Defendant Virtue is a citizen of Florida.

## **FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS**

67.     By reason of their positions as officers, directors, and fiduciaries of Revolution Lighting and because of their ability to control the business and corporate affairs of Revolution Lighting, the Individual Defendants owed Revolution Lighting and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Revolution Lighting in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Revolution Lighting and its shareholders so as to benefit all shareholders equally.

68.     Each director, officer, and controller of the Company owes to Revolution Lighting and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

69.     The Individual Defendants, because of their positions of control and authority as directors, officers, and/or controllers of Revolution Lighting, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.

70.     To discharge their duties, the officers, directors, and controllers of Revolution Lighting were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

71.     Each Individual Defendant, by virtue of his position as a director, officer, and/or controlling shareholder owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors, officers, and controllers of Revolution Lighting, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers, directors, and/or controllers of the Company has been ratified by the remaining Individual Defendants who collectively comprised Revolution Lighting's Board at all relevant times.

72.     As senior executive officers, directors, and controllers of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and traded on the NASDAQ, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, and had a duty to cause the Company to disclose omissions of material fact in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information.

73.     To discharge their duties, the officers and directors of Revolution Lighting were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Revolution Lighting were required to, among other things:

        (a)     ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Connecticut, Delaware, and the United States, and pursuant to Revolution Lighting's own code of conduct;

        (b)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

        (c)     remain informed as to how Revolution Lighting conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices;

(d)     establish and maintain systematic and accurate records and reports of the business and internal affairs of Revolution Lighting and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Revolution Lighting's operations would comply with all applicable laws and Revolution Lighting's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

(f)     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

(g)     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

(h)     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

74.     Each of the Individual Defendants further owed to Revolution Lighting and the shareholders the duty of loyalty requiring that each favor Revolution Lighting's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

75.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Revolution Lighting and were at all times acting within the course and scope of such agency.

76.     Because of their advisory, executive, managerial, directorial, and controlling positions with Revolution Lighting, each of the Individual Defendants had access to adverse, non-public information about the Company.

77.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Revolution Lighting.

**CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

78.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their wrongdoing. The Individual Defendants caused the Company to conceal the true facts as alleged herein. The Individual Defendants further aided and abetted and assisted each other in breaching their respective duties.

79.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, waste of corporate assets, and violations of Sections 14(a) of the Exchange Act.

80.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company purposefully, recklessly, or negligently to conceal material facts, fail to correct such misrepresentations, and violate applicable laws. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants collectively and individually took the actions set forth herein. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants, who are directors of

Revolution Lighting, was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

81.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with actual or constructive knowledge of the primary wrongdoing, either took direct part in, or substantially assisted the accomplishment of that wrongdoing, and was or should have been aware of his overall contribution to and furtherance of the wrongdoing.

82.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of Revolution Lighting and was at all times acting within the course and scope of such agency.

## REVOLUTION LIGHTING'S CODE OF CONDUCT

83.     The Company's Code of Business Conduct and Ethics (the "Code of Conduct") states that it "sets out our basic guiding principles and applies to each employee of the Company and its subsidiaries and each member of the Company's Board of Directors. Every employee and director must be familiar with and understand the provisions of this Code of Conduct."

84.     The Code of Conduct states that compliance with all applicable governmental laws, rules, and regulations is a requirement, stating specifically under a section titled "Compliance with Laws, Rules and Regulations" that:

> You are required to comply with all applicable governmental laws, rules and regulations that govern the conduct of our business at all times and to report any suspected violations in accordance with this Code of Conduct. If you have a question about the applicability or interpretation of any law, rule or regulation, you should contact the Chief Financial Officer. The Company will not tolerate any retaliation against any person who communicates bona fide concerns to the Company or law enforcement officials concerning a possible violation of any law, regulation or this Code.

85.     The Code of Conduct provides, as to "Disclosures" that it is the Company's policy to make "full, fair, accurate, timely and understandable disclosure[.]" Specifically, the Code of Conduct outlines in relevant part:

> It is Company policy to make full, fair, accurate, timely and understandable disclosure in compliance with all applicable laws and regulations in all reports and documents that the Company files with, or submits to, the Securities and Exchange Commission and in all other public communications made by the Company. The Company's senior officers and financial and accounting group are ultimately responsible for taking all necessary steps to ensure that this occurs. All employees and directors shall take appropriate steps within their areas of responsibility to ensure the same.

> It is the responsibility of each employee to promptly to bring to the attention of the Chief Financial Officer or the Chairman of the Audit Committee any credible information of which he or she becomes aware that would place in doubt the accuracy and completeness in any material respect of any disclosures of which he or she is aware that have been made, or are to be made, directly or indirectly by the Company in any SEC filing or submission or any other formal or informal public communication, whether oral or written.

> In addition, each employee is responsible for promptly bringing to the attention of the Chief Financial Officer or the Chairman of the Audit Committee any credible information of which he or she becomes aware that indicates any deficiency in the Company's internal control over financial reporting within the meaning of Section 404 of the Sarbanes-Oxley Act and the SEC's implementing rules, and/or the Company's disclosure controls and procedures for preparing SEC reports or other public communication as mandated by Section 302 of the Sarbanes-Oxley Act and the SEC's implementing rules, even if a materially inaccurate or incomplete disclosure by or on behalf of the Company has not resulted or is not expected imminently to result from such deficiency.

86.     The Code of Conduct also addresses the Company's independent auditors, stating that, "[e]mployees and directors are prohibited from directly or indirectly taking any action to fraudulently influence, coerce, manipulate or mislead the Company's independent public auditors for the purpose of rendering the financial statements of the Company misleading."

87.     In violation of the Code of Conduct, the Individual Defendants conducted little, if any, oversight of the Individual Defendants' scheme to improperly recognize and report revenue,

to issue materially false and misleading statements to the public, and to facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, waste of corporate assets, unjust enrichment, and violations of Sections 14(a) of the Exchange Act. Moreover, in violation of the Code of Conduct, the Individual Defendants failed to comply with laws and regulations.

## INDIVIDUAL DEFENDANTS' MISCONDUCT

### Background

88.     Revolution Lighting designs, manufactures, markets, and sells LED lighting solutions globally to commercial, industrial, and government markets.

89.     The Company generates revenue by selling its lighting products to these markets through networks of electrical distributors and supply companies, electrical contractors, energy service companies (ESCOs), end-users, independent sales agencies and representatives, and its own internal marketing and direct sales force.

90.     Prior to 2012, the Company's only subsidiary was Lumificient, which it had acquired in 2008 as Nexxus Lighting, Inc.

91.     On September 12, 2012, the Company entered into the Investment Agreement with RVL, an affiliate of Aston. Through the Investment Agreement, RVL made a $6 million dollar investment in the Company in exchange for newly created Series B convertible preferred stock, $.001 par value per share, representing 73% of outstanding voting stock and resulting in a change of control whereby Defendant LaPenta was named Chairman and CEO, the Company's name changed to Revolution Lighting Technologies. Inc., and the entire Board was replaced by new directors.

92.     Revolution Lighting receives financing primarily through the Company's controlling shareholders RVL and Aston. Both RVL and Aston are entities affiliated with the Company's Chairman, CEO, and President, Defendant LaPenta. Aston also assists Revolution Lighting customers to purchase and install LED lighting products. In addition, through the Management Agreement, Aston provides consulting services related to financial matters, budgeting, strategic business planning, and business development.

93.     Revolution Lighting has acquired a number of entities since 2012, including Relume in August 2013, an LED product manufacturer, and Value Lighting in April 2014, which supplies lighting solutions to the multifamily residential market. Some of the Company's acquisitions were funded through loans obtained by RVL, Aston, and/or Defendant LaPenta.

94.     Beginning at least in 2014, the Company began recording certain contracts, mainly in its multifamily division between Value Lighting and its customers, using a bill and hold accounting method, where revenue is recognized when a sale occurs, but the goods are not delivered until a later date. These transactions were recorded in a manner that delayed and improperly accounted for the recognition of revenue. The Company additionally disclaimed its assessments on internal controls for the revenue of certain subsidiaries, including Relume and Value Lighting during the Relevant Period. The Company disclosed in its SEC filings that it recognized revenue for products once shipped or delivered to customers, "provided no significant obligations remain and collection is probable." With respect to certain customer sales, the Company purported to record revenue once the customer accepted the terms of the arrangement.

95.     In August 2018, the Company filed a quarterly report with the SEC on a Form 10-Q for the quarter ended June 30, 2018 (the "2018-Q2") that revealed that certain controls over the Company's revenue recognition were deficient, specifically with respect to identifying collection

patterns, finalizing and reviewing executed contracts related to bill and hold arrangements, and recording material costs. The 2018-Q2 stated that "these control deficiencies aggregate to a material weakness at June 30, 2018."

96.     On October 19, 2018, the Company issued a press release disclosing that the SEC was conducting an investigation into the Company's revenue recognition practices. The press release stated in relevant part:

> There is currently an ongoing investigation by the SEC regarding certain revenue recognition practices, including bill and hold transactions that occurred between 2014 through the second quarter of 2018. The Company estimates that the net effect on the reported revenue as a result of, among other things, recording revenue based on shipments of products, as opposed to bill and hold revenue recognition used by the Company, would have been to reduce revenue by $5.0 million, $6.3 million and $6.3 million in each of 2014, 2015 and 2016, respectively, and increase revenue by $11.6 million and $5.1 million in 2017 and 2018, respectively. In connection with the results of the investigation to date, the Company is in the process of assessing its revenue recognition policies and the resulting effects on its financial results, and adopting remedial measures to improve its internal controls as described in its Form 10-Q for the second quarter of 2018. The SEC investigation is ongoing and there can be no assurance as to whether additional remedial measures will be required. The Company will continue to cooperate with the SEC regarding the investigation.

97.     On November 22, 2018, the Company filed a Current Report on a Form 8-K with the SEC disclosing that it had received a notification from NASDAQ informing the Company that it was not in compliance with NASDAQ listing rules due to its failure to timely file its quarterly report on Form 10-Q for the fiscal quarter ended September 30, 2018. The Form 8-K also noted that the delay was due to an ongoing review by the Audit Committee over the accuracy of the Company's previously filed financial statements.

98.     On December 11, 2018, the Company filed a Current Report on Form 8-K with the SEC announcing that, based on the ongoing Audit Committee review, the Company's consolidated financial statements as of and for the fiscal years ended December 31, 2015, 2016, 2017, and each

fiscal quarter therein and the first two fiscal quarters of 2018 ended March 31, 2018 and June 30, 2018 respectively should no longer be relied upon. The 8-K additionally stated in relevant part:

> To date, the Audit Committee's review has focused principally on the analysis of selected bill and hold transactions in 2016. Based on currently available information and documentation, the Company has identified apparent errors in its previously filed financial statements for 2016, the correction of which would be material to its previously filed financial statements for 2017. If additional information with respect to the selected 2016 transactions becomes available, this conclusion may be reassessed. The Audit Committee will continue to assess the accuracy of the Company's previously filed financial statements for the fiscal periods listed above, and will assess the impact of the errors on the Company's disclosure controls and procedures and internal control over financial reporting.

**False and Misleading Statements**

***March 14, 2014 Form 10-K***

99.     On March 14, 2014, the Company filed with the SEC its annual report for the fiscal year ended December 31, 2013 on a Form 10-K (the "2013 10-K"), which was signed by all the Individual Defendants. The 2013 10-K reported revenue of $26.06 million and outlined the Company's policy pertaining to revenue recognition, stating in relevant part:

> We recognize revenue for our products upon shipment or delivery to customers in accordance with the respective contractual arrangements, provided no significant obligations remain and collection is probable. For sales that include customer acceptance terms, revenue is recorded after customer acceptance. It is our policy that all sales are final. Requests for returns are reviewed on a case by case basis. As revenue is recorded, we accrue an estimated amount for product returns as a reduction of revenue.

> Revenues from merchandise shipped to a logistics supplier for Seesmart, who had the contractual right to return merchandise in inventory, was recognized when the merchandise was delivered by the logistics supplier to the end user. Payments received from the logistics supplier prior to recognizing the related revenue are recorded as customer deposits. During the first quarter of 2013, this arrangement was terminated.

> Pursuant to agreements with distributors, which provide the distributors with the rights to purchase and resell inventory, we receive up front licensing fees for ongoing support obligations during the term of the agreement. Such fees are amortized by us over the term of the contracts which range from three to ten years. Unamortized

licensing fees are included in deferred revenue in the accompanying consolidated balance sheets.

Sales taxes billed to customers are recorded on a gross basis as revenues. From time to time, we enter into multiple element arrangements to provide products and installation services. Revenues are allocated to each element based on our best estimate of the selling prices of each element.

100.     The 2013 10-K also included a disclaimer as to the Company's internal controls over certain wholly owned subsidiaries, including Relume and Tri-State DE LLC, stating in relevant part:

In conducting the Company's evaluation of the effectiveness of its internal control over financial reporting, management determined that the internal control systems of Relume Technologies, Inc. and Tri-State DE LLC, wholly owned subsidiaries acquired on August 22, 2013 and November 15, 2013, respectively, would be excluded from its internal control assessment, as permitted by guidance issued by the Securities and Exchange Commission. Accordingly, as of and for the year ended December 31, 2013, internal control systems underlying to approximately 24% of consolidated revenues and 14% of consolidated assets have been excluded from management's evaluation of internal control over financial reporting.

101.     Attached to the 2013 10-K were certifications pursuant to Rules 13a-14(a) and 15d under the Exchange Act and the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants LaPenta and Schafer attesting to the accuracy of the 2013 10-K.

### *May 12, 2014 Form 10-Q*

102.     On May 12, 2014, Revolution Lighting filed with the SEC its quarterly report on Form 10-Q for its first fiscal quarter ended March 31, 2014 (the "2014-Q1") which included reported revenue of $4.95 million. The 2014-Q1 noted that "[t]here was no change in [Revolution Lighting's] internal controls over financial reporting that occurred during the quarter ended March 31, 2014 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting."

103. The 2014-Q1 contained SOX certifications signed by Defendant LaPenta and Schafer attesting to the accuracy of the 2014-Q1.

### *August 7, 2014 Form 10-Q*

104. On August 7, 2014, Revolution Lighting filed with the SEC its quarterly report on Form 10-Q for its second fiscal quarter ended June 30, 2014 (the "2014-Q2") which reported revenue of $17.52 million. The 2014-Q2 also noted that the Company had implemented new accounting systems during the quarter, stating specifically that:

> During the second quarter of 2014, the Company implemented new accounting systems and related modifications of processes and controls at its Relume and Lumificient subsidiaries. The Company also hired Directors of Finance at its Relume, Seesmart and newly acquired Value Lighting subsidiaries and expanded its accounting resources at its corporate headquarters and Value Lighting subsidiaries.

105. The 2014-Q2 contained SOX certifications signed by Defendant LaPenta and Schafer attesting to the accuracy of the 2014-Q2.

### *November 6, 2014 Form 10-Q*

106. On November 6, 2014, Revolution Lighting filed with the SEC its quarterly report on Form 10-Q for its third fiscal quarter ended September 30, 2014 (the "2014-Q3") which reported revenue of $26.88 million. The 2014-Q3 also maintained that there were no material changes made to the Company's internal controls over financial reporting, stating specifically, "[t]here was no change in [Revolution Lighting's] internal controls over financial reporting that occurred during the quarter ended September 30, 2014 that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting."

107. The 2014-Q3 contained SOX certifications signed by Defendant LaPenta and Schafer attesting to the accuracy of the 2014-Q3.

### *March 16, 2015 Form 10-K*

Verified Shareholder Derivative Complaint

108.     On March 16, 2015, the Company filed with the SEC its annual report for the fiscal year ended December 31, 2014 (the "2014 10-K") which was signed by all the Individual Defendants. The 2014 10-K disclaimed any evaluation as to the internal controls of Value Lighting and All Around, both wholly owned subsidiaries of the Company. Specifically, the 2014 10-K stated:

> In conducting the Company's evaluation of the effectiveness of its internal control over financial reporting, management determined that the internal control systems of Value Lighting and All Around, wholly-owned subsidiaries acquired on April 17, 2014 and December 18, 2014, respectively, would be excluded from its internal control assessment, as permitted by guidance issued by the Securities and Exchange Commission. Accordingly, as of and for the year ended December 31, 2014, internal control systems underlying to approximately 60% of consolidated revenues and 24% of consolidated assets (excluding goodwill and identifiable intangible assets), have been excluded from management's evaluation of internal control over financial reporting.

109.     Attached to the 2014 10-K were SOX certifications signed by Defendants LaPenta and Schafer attesting to the accuracy of the 2014 10-K.

***November 5, 2015 Form 10-Q***

110.     On November 5, 2015, Revolution Lighting filed with the SEC its quarterly report on Form 10-Q for its third fiscal quarter ended September 30, 2015 (the "2015-Q3") which reported $37.73 million in revenue and discussed a different revenue policy from its prior disclosures. The 2015-Q3 outlined revenue recognition methods used by the Company in different transactions, stating in relevant part:

> The Company recognizes revenue for its products upon shipment or delivery to customers in accordance with the respective contractual arrangements, provided no significant obligations remain and collection is probable. For sales that include customer acceptance terms, revenue is recorded after customer acceptance. It is the Company's policy that all sales are final. Requests for returns are reviewed on a case-by-case basis. As revenue is recorded, the Company accrues an estimated amount for product returns as a reduction of revenue.

> The Company recognizes revenue from fixed-price and modified fixed-price contracts for turnkey energy conservation projects using the percentage-of

completion method of accounting. The percentage-of-completion is computed by dividing the actual incurred cost to date by the most recent estimated total cost to complete the project. The computed percentage is applied to the expected revenue for the project to calculate the contract revenue to be recognized in the current period. This method is used because management considers total cost to be the best available measure of progress on these contracts. Contract costs include all direct material and labor costs and indirect costs related to contract performance. Provisions for estimated losses on uncompleted contracts are made in the period in which such losses are determined.

111.    The 2015-Q3 contained SOX certifications signed by Defendant LaPenta and DePalma attesting to the accuracy of the 2015-Q3.

### March 10, 2016 Form 10-K

112.    On March 10, 2016, the Company filed with the SEC its annual report for the fiscal year ended December 31, 2015 (the "2015 10-K"), which was signed by all the Individual Defendants. The 2015 10-K reported revenue of $129.66 million.

113.    Attached to the 2015 10-K were SOX certifications signed by Defendants LaPenta and DePalma attesting to the accuracy of the 2015 10-K.

### March 9, 2017 Form 10-K

114.    On March 9, 2017, the Company filed with the SEC its annual report for the fiscal year ended December 31, 2016 (the "2016 10-K"), which was signed by all the Individual Defendants, excluding Defendant Schafer. The 2016 10-K reported revenue of $172.12 million.

115.    Attached to the 2016 10-K were SOX certifications signed by Defendants LaPenta and DePalma attesting to the accuracy of the 2016 10-K.

### March 23, 2017 Proxy Statement

116.     The Company filed its 2017 Proxy Statement with the SEC on March 23, 2017. The Individual Defendants all solicited the 2017 Proxy Statement filed pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions.[3]

117.     The 2017 Proxy Statement stated, regarding the Company's Code of Conduct, that:

[t]his policy applies to the members of our Board of Directors and all employees, including (but not limited to) our principal executive officer, principal financial officer, principal accounting officer or controller and persons performing similar functions. This policy comprises written standards that are reasonably designed to deter wrongdoing and to promote the behavior described in Item 406 of Regulation S-K promulgated by the SEC.

118.     The 2017 Proxy Statement was false and misleading because, despite assertions to the contrary, its Code of Conduct was not followed, as evidenced by the numerous false and misleading statements alleged herein and the Individual Defendants' failures to report violations of the Code of Conduct.

119.     The 2017 Proxy Statement also failed to disclose, *inter alia* that: (1) Revolution Lighting was improperly recording revenue for certain transactions, primarily bill and hold transactions, at the proper time, rendering the Company's financial statements from 2014 through the second quarter of 2018 false; (2) the Company had deficient internal controls over financial reporting; (3) Revolution Lighting was or would become the subject of an SEC investigation and experience substantial costs, and; (4) the Company failed to maintain internal controls. Due to the foregoing, Defendants' statements regarding the Company's business, operations, and prospects were materially false, misleading, and lacked a reasonable basis in fact at all relevant times.

**Truth Begins to Emerge While False and Misleading Statements Continue**

---

[3] Plaintiff's allegations with respect to the misleading statements in the 2017 Proxy Statement are based solely on negligence; they are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants, and they do not allege, and do not sound in, fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these allegations and related claims.

*September 22, 2017 Press Release*

120.     On September 22, 2017, the Company issued a press release reducing its full year guidance from $195-205 million to $180-185 million due to, *inter alia*, "slippage of a number of Energy Source division project." The press release also revealed lowered expected revenue for the third quarter from $52 -55 million to $42-44 million. Nonetheless, the press release falsely assured investors that the "negative impact is short-term and we expect to begin seeing a recovery in the fourth quarter and into 2018." Specifically, the press release stated in relevant part:

> As a result of recent hurricane activity in Texas and the south east impacting our multifamily lighting revenue, and the slippage of a number of our Energy Source division projects from the third quarter to the fourth quarter, our third quarter results will be negatively impacted.
>
> As a result of the above, we expect third quarter revenue of approximately $42-44 million versus our previous guidance of $52 - 55 million. We expect EBITDA in the 5-6% range.
> Revolution Lighting expects revenue in the fourth quarter in the $60 - 65 million range representing a 50% increase over the third quarter and resulting in revenue for the full year in the range of $180 - 185 million verses prior guidance of $195 - 205 million.
>
> We currently forecast EBITDA in the 8% range with positive cash flow for the year.
>
> We are disappointed that the recent catastrophic events have negatively impacted our results, and like all of us, we feel and pray for all those who have been affected.
>
> We believe this negative impact is short-term and we expect to begin seeing a recovery in the fourth quarter and into 2018.

121.     Following this news, the price per share of Company stock fell $1.32, over 17% from the previous day's trading to close at $6.26 on September 22, 2017.

*March 8, 2018 Form 10-K*

122.     On March 8, 2018, the Company filed with the SEC its annual report for the fiscal year ended December 31, 2017 (the "2017 10-K"), which was signed Defendants LaPenta, DePalma, Ingram, McCarthy, and Virtue. The 2017 10-K reported revenue of $152.31 million and

noted that "management concluded that [Revolution Lighting's] disclosure controls and procedures were effective at a reasonable assurance level as of the end of the period covered by the report."

123.    Attached to the 2017 10-K were SOX certifications signed by Defendants LaPenta and DePalma attesting to the accuracy of the 2017 10-K.

*March 22, 2018 Proxy Statement*

124.    The Company filed its 2018 Proxy Statement with the SEC on March 22, 2018. The Individual Defendants, excluding Defendant Schafer, all solicited the 2018 Proxy Statement filed pursuant to Section 14(a) of the Exchange Act, which contained material misstatements and omissions.[4]

125.    The 2018 Proxy Statement stated, regarding the Company's Code of Conduct, that:

[t]his policy applies to the members of our Board of Directors and all employees, including (but not limited to) our principal executive officer, principal financial officer, principal accounting officer or controller and persons performing similar functions. This policy comprises written standards that are reasonably designed to deter wrongdoing and to promote the behavior described in Item 406 of Regulation S-K promulgated by the SEC.

126.    The 2018 Proxy Statement was false and misleading because, despite assertions to the contrary, its Code of Conduct was not followed, as evidenced by the numerous false and misleading statements alleged herein and the Individual Defendants' failures to report violations of the Code of Conduct.

---

[4] Plaintiff's allegations with respect to the misleading statements in the 2018 Proxy Statement are based solely on negligence; they are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants, and they do not allege, and do not sound in, fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these allegations and related claims.

127.     The 2018 Proxy Statement also failed to disclose, *inter alia* that: (1) Revolution Lighting was improperly recording revenue for certain transactions, primarily bill and hold transactions, at the proper time, rendering the Company's financial statements from 2014 through the second quarter of 2018 false; (2) the Company had deficient internal controls over financial reporting; (3) Revolution Lighting was or would become the subject of an SEC investigation and experience substantial costs, and; (4) the Company failed to maintain internal controls. Due to the foregoing, Defendants' statements regarding the Company's business, operations, and prospects were materially false, misleading, and lacked a reasonable basis in fact at all relevant times.

### *May 1, 2018 Form 10-Q*

128.     On May 1, 2018, Revolution Lighting filed with the SEC its quarterly report on Form 10-Q for its first fiscal quarter ended March 31, 2018 (the "2018-Q1") which reported revenue of $33.74 million. The 2018-Q1 also maintained that the Company's disclosure controls were effective and further disclosed that the Company had implanted a new revenue standard which included revisions to the Company's existing revenue recognition methods. The 2018-Q1 stated in relevant part:

> Beginning January 1, 2018, we implemented ASC 606, "*Revenue from Contracts with Customers*." Although the new revenue standard had an immaterial impact on our ongoing net income, we did implement changes to our processes related to revenue recognition and the control activities within them. These included the development of new policies based on the five-step model provided in the new revenue standard, new training, ongoing contract review requirements, and gathering of information provided for disclosures.

129.     The 2018-Q1 contained SOX certifications signed by Defendant LaPenta and DePalma attesting to the accuracy of the 2018-Q1.

### *August 2, 2018 Press Release*

130.     More negative news continued to ensue. The Company issued a press release on August 2, 2018 which announced disappointing financial results for the second quarter purportedly

tied to "project delays." The press release reported revenue of $36.5 million and included assurances by Defendant LaPenta, stating in relevant part:

> 'I am extremely pleased with the progress over the past several quarters in right sizing our company, improving our operational processes and strengthening our sales and marketing resources. In addition, we continue to balance our portfolio of products and solutions to meet and exceed the needs of our expanding customer base,' said Robert V. LaPenta, Chairman, CEO and President of Revolution Lighting Technologies. 'While we were below our expectations regarding our second quarter results, we remain excited about the second half of 2018 and beyond. We begin the second half of 2018 with our largest backlog of over $50 million and there were a number of large projects where we are the selected lighting provider but the project has slipped to the second half.'

131.   On this news, the price per share of Company stock fell $0.53, almost 14% from the previous trading day, closing at $3.37 on August 2, 2018. The price per share dropped further over the following two trading sessions by $0.55, or 18%, to close at $2.82 on August 6, 2018.

132.   The statements in ¶¶ 99-115, 120-123, and 128-130 were materially false and misleading, and they failed to disclose material facts necessary to make the statements made not false and misleading. Specifically, the Individual Defendants improperly failed to disclose *inter alia,* that: (1) Revolution Lighting was improperly recording revenue for certain transactions, primarily bill and hold transactions, at the proper time, rendering the Company's financial statements from 2014 through the second quarter of 2018 false; (2) the Company had deficient internal controls over financial reporting; (3) Revolution Lighting was or would become the subject of an SEC investigation and experience substantial costs, and; (4) the Company failed to maintain internal controls. As a result of the foregoing, Defendants' statements regarding the Company's business, operations, and prospects were materially false, misleading, and lacked a reasonable basis in fact at all relevant times.

**The Truth Continues to Emerge**

***August 13, 2018 Form 10-Q***

133.    On August 13, 2018, Revolution Lighting filed with the SEC the 2018-Q2, which reported revenue of $36.44 million and revealed that the Company had identified significant deficiencies in its controls in December 2017 which specifically involved revenue recognition for bill and hold transactions. The 2018-Q2 stated in relevant part:

> As of December 31, 2017, our management conducted an evaluation of our internal control over financial reporting and determined that our internal control over financial reporting was effective. At such date we identified a significant deficiency related to the controls over the proper identification of certain collection patterns relevant for bill and hold revenue recognition. Since December 31, 2017, our management has implemented changes in internal control over financial reporting to address this significant deficiency, including changing the design of existing controls and implementing additional transaction level and review controls. In addition, corporate management is strengthening the internal accounting functions at the divisional or subsidiary level, where appropriate.

134.    The 2018-Q2 further revealed that certain review controls and other revenue recognition practices were not operating effectively as of June 30, 2018, stating in relevant part:

> At June 30, 2018, we have determined that certain of the transaction level and review controls over revenue recognition have not operated effectively. Specifically, our management has identified control deficiencies related to the proper identification of certain collection patterns and the finalization and review of executed contracts related to bill and hold arrangements and controls over the recording of material costs. We have determined that these control deficiencies aggregate to a material weakness at June 30, 2018.

135.    The 2018-Q2 contained SOX certifications signed by Defendant LaPenta and DePalma attesting to the accuracy of the 2018-Q2.

136.    The statements in ¶¶ 133-135 were materially false and misleading, and they failed to disclose material facts necessary to make the statements made not false and misleading. Specifically, the Individual Defendants improperly failed to disclose *inter alia,* that: (1) Revolution Lighting was improperly recording revenue for certain transactions, primarily bill and hold transactions, at the proper time, rendering the Company's financial statements from 2014 through the second quarter of 2018 false; (2) the Company was or would become the subject of an SEC

investigation and experience substantial costs, and; (3) the Company failed to maintain internal controls. As a result of the foregoing, Defendants' statements regarding the Company's business, operations, and prospects were materially false, misleading, and lacked a reasonable basis in fact at all relevant times.

### *October 17, 2018 Press release*

137.     On October 17, 2018, the Company issued a press release announcing preliminary financial results for third fiscal quarter ended September 30, 2018. The press release reported expected revenue of $33 million, which was lower than the previously issued expected revenue guidance of $40-41 million. The press release also announced that Defendant LaPenta had offered to acquire all the common stock of the Company not already owned by him or his affiliates for $2.00 per share and included the text of the offer letter sent to Revolution Lighting. The press release also lowered revenue guidance for the year by over $20 million. Specifically, the press release stated:

> While the company has been successful in winning a number of important projects, it continues to experience delays in starting and or shipping against these projects particularly at our multifamily and Tri-State divisions. As a result, we expect revenue of approximately $33 million for the third quarter versus prior third quarter guidance of $40-$41 million. Due to the decline in expected third quarter revenue and our current outlook for the fourth quarter, total revenue for the full year 2018 is expected to approximate $140-$145 million versus our previous full year guidance of $160-$170 million.

> We are disappointed in our results and recognize that we need to address our overall business structure, reduce operating costs to a level more aligned with our revenue expectations and address our level of outstanding debt. Over the past six months, our CEO and Chairman, Robert LaPenta, has provided approximately $15 million of capital to fund operations, bringing our total debt, including bank financing, to over $60 million. Mr. LaPenta believes additional capital requirements cannot presently be addressed through third party financing. Mr. LaPenta has proposed to acquire all of the common stock of the Company that he and his affiliates do not currently own. The text of Mr. LaPenta's letter to the Company's independent directors appears in full below: We write to you in connection with your roles as independent, disinterested members of the Board of Directors.

* * *

Without additional funding, we believe that the Company may be forced to consider various restructuring alternatives in the near term. Simply put, we do not believe that it is in the best interests of the Company and its stockholders to continue as a publicly traded enterprise, as we believe it currently lacks sufficient scale and the ongoing costs of maintaining the reporting and related infrastructure necessary for public reporting are a significant financial burden on the Company. In addition, we believe the constant pressure to meet quarterly earnings targets has been a significant distraction to the Company's management and has prevented management from appropriately focusing on the long term growth and the development of the Company's business.

**As a result of the above factors, we propose to acquire all of the common stock of the Company that we do not currently own for a price of $2.00 per share.** Given our familiarity with the Company, we would not need to conduct any further due diligence on the Company and would be in a position to sign a definitive transaction agreement quickly.

138.     On this news, the price per share of Company stock decreased further by $0.98, over 38% from the previous trading day, to close at $1.58 per share on October 17, 2018.

### October 19, 2018 Press release

139.     In line with the string of bad news related to the Company's operations, controls, and performance, on October 19, 2018, the Company issued a press release disclosing that the SEC was conducting an investigation into the Company over its revenue recognition practices, including bill and hold transactions, for its financial statements filed from 2014 until the second quarter of 2018. The press release included the Company's estimated impact on revenue resulting from its accounting policy used during the Relevant Period i.e. recording revenue based on product shipments as opposed to bill and hold revenue recognition. Specifically, the press release stated:

Management does not believe that revenue reduction described in the release is due to any loss or deterioration of the Company's business or from the discontinuation of bill and hold transactions that are the subject of an investigation by the Securities and Exchange Commission ("SEC"), as described below, but rather resulted from the timing of the start and completion of programs during the third quarter at the Company's Value and Tristate divisions. These delays, plus a revised more conservative outlook regarding the fourth quarter revenue guidance, resulted in the reduced outlook for the year.

There is currently an ongoing investigation by the SEC regarding certain revenue recognition practices, including bill and hold transactions that occurred between 2014 through the second quarter of 2018. The Company estimates that the net effect on the reported revenue as a result of, among other things, recording revenue based on shipments of products, as opposed to bill and hold revenue recognition used by the Company, would have been to reduce revenue by $5.0 million, $6.3 million and $6.3 million in each of 2014, 2015 and 2016, respectively, and increase revenue by $11.6 million and $5.1 million in 2017 and 2018, respectively. In connection with the results of the investigation to date, the Company is in the process of assessing its revenue recognition policies and the resulting effects on its financial results, and adopting remedial measures to improve its internal controls as described in its Form 10-Q for the second quarter of 2018.

Company is in the process of assessing its revenue recognition policies and the resulting effects on its financial results, and adopting remedial measures to improve its internal controls as described in its Form 10-Q for the second quarter of 2018. The SEC investigation is ongoing and there can be no assurance as to whether additional remedial measures will be required. The Company will continue to cooperate with the SEC regarding the investigation.

140.    On this news, the price per share of Company stock fell by $0.16, over 10% from the previous trading day, to close at $1.43 per share on October 22, 2018.

*November 13, 2018 Notice of Late Filing Form 12b-25*

141.    Due to the SEC investigation and subsequent Audit Committee review into the Company's revenue recognition practices during the Relevant Period, the Company was unable to timely file its quarterly report with the SEC for the period ended September 30, 2018. On November 13, 2018, the Company filed a Notice of Late Filing on a Form 12b-25 with the SEC disclosing the Audit Committee review and further information pertaining to the Company's revenue practices. Specifically, the Form 12b-25 stated:

Beginning in 2014, the Company used bill and hold revenue accounting principally for certain contracts in its Multi-family division between its Value Lighting subsidiary and its customers. Upon satisfaction of specific requirements imposed by accounting principles and interpretations of the SEC staff, bill and hold revenue accounting permits a company to record revenue on products segregated for delivery within its own warehouse. Absent satisfaction of these requirements, revenue recognition generally should await delivery of products to customers.

The Company's Audit Committee also is conducting a review to assess the accuracy of the Company's previously filed financial statements, the current focus of which is to review the extent to which the Company incorrectly recognized revenue with respect to bill and hold transactions from 2014 until the second quarter of fiscal 2018, and whether the Company's accounting for those transactions led to material errors in its financial statements. If this ongoing review results in a conclusion that the Company made material errors in its financial statements, the Company would restate the affected financial statements to the extent required. In any such restatement, some revenue recognized in prior periods would be recognized in later periods. While the Audit Committee review is ongoing, the Company will not be able to provide financial statements for the fiscal quarter ended September 30, 2018.

***November 14, Press Release***

142.   On November 14, 2018, the Company issued a press release announcing that it had received an updated proposal from Defendant LaPenta in connection with his offer to acquire the remaining common stock of the Company. The revised proposal lowered Defendant LaPenta's initial offer of $2.00 to $1.50. The press release provided the text of the offer letter and stated in relevant part:

> Revolution Lighting Technologies, Inc. (NASDAQ: RVLT) ("Revolution Lighting" or the "Company"), a global provider of advanced LED lighting solutions announced today that on November 14, 2018, the Transaction Committee of the Board of Directors of the Company received a revised proposal from RVL I LLC, an affiliate of the Company's Chairman and CEO, Robert V. LaPenta, to acquire all of the outstanding common stock of the Company. The Transaction Committee is in the process of considering the proposal with assistance from its advisors and will have no comment until its evaluation is complete. The text of the letter to the Transaction Committee of the Company's Board of Directors appears in full below:

>> We write in connection with our October 16, 2018 letter (the "Offer Letter") regarding our offer to acquire all of the common stock of Revolution Lighting Technologies, Inc. (the "Company") on behalf of RVL 1, LLC (together with its affiliates and certain related persons, "we" or "us") that we do not own.

>> * * *

>> Over the last month, we have provided the Company with $7.5 million in debt financing, and we may be required to provide up to an additional $7.0 million in debt financing to fund the Company's operations in the ordinary course through the end of 2018. We further understand that the Company may require additional funding

in 2018 in the event of unforeseen circumstances, and we expect the Company to require additional funds to continue its operations beyond 2018, with the extent of such additional required funds depending upon the Company's future results of operation and the amount of time and expense necessary to complete the previously disclosed SEC investigation and the Audit Committee's review of the Company's historical financial statements and other related costs. We intend to continue to fund the Company through continued periodic loans to the extent consistent with what we believe to be the best interests of the Company and its stockholders. The Company's overall debt as of November 12, 2018 was $65.0 million and, as noted above, will rise further as additional debt financing is provided. This ***increased amount of debt, which exceeds the amount that we expected the Company to have at the time of our Offer Letter, as well as an anticipated delay in completing a going private transaction and the developments in the Company's business that it has disclosed, including the SEC investigation and the Audit Committee's review, will necessitate a decrease from the $2.00 per share offer contained in our Offer Letter to a revised offer of $1.50 per share***. Over the last month, we have provided the Company with $7.5 million in debt financing, and we may be required to provide up to an additional $7.0 million in debt financing to fund the Company's operations in the ordinary course through the end of 2018. We further understand that the Company may require additional funding in 2018 in the event of unforeseen circumstances, and we expect the Company to require additional funds to continue its operations beyond 2018, with the extent of such additional required funds depending upon the Company's future results of operation and the amount of time and expense necessary to complete the previously disclosed SEC investigation and the Audit Committee's review of the Company's historical financial statements and other related costs. We intend to continue to fund the Company through continued periodic loans to the extent consistent with what we believe to be the best interests of the Company and its stockholders. The Company's overall debt as of November 12, 2018 was $65.0 million and, as noted above, will rise further as additional debt financing is provided. This ***increased amount of debt, which exceeds the amount that we expected the Company to have at the time of our Offer Letter, as well as an anticipated delay in completing a going private transaction and the developments in the Company's business that it has disclosed, including the SEC investigation and the Audit Committee's review, will necessitate a decrease from the $2.00 per share offer contained in our Offer Letter to a revised offer of $1.50 per share***.

143.    On this news, the price per share of Company stock fell $0.55, almost 40% from the previous trading day, to close at a mere $0.85 per share on November 15, 2018.

144.    On March 8, 2019, the Company issued a press release announcing that Defendant LaPenta and RVL had concluded it was not the right time to pursue the acquisition offer. The press release included the letter withdrawing RVL and Defendant LaPenta's offer, which stated in relevant part, "[w]hile we continue to believe in the desirability of the Company ceasing to continue as a publicly traded enterprise, given the publicly disclosed developments since our Offer Letters, we have reluctantly come to the conclusion that now is not the right time for us to pursue such a going private transaction."

## DAMAGES TO REVOLUTION LIGHTING

145.    As a direct and proximate result of the Individual Defendants' conduct, Revolution Lighting has lost and expended, and will lose and expend, many millions of dollars.

146.    Such expenditures include, but are not limited to, legal fees associated with the Securities Class Actions filed against the Company, its CEO, its CFO, and its former CFO, the SEC investigation, and amounts paid to outside lawyers, accountants, and investigators in connection thereto.

147.    As a direct and proximate result of the Individual Defendants' conduct, Revolution Lighting has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and their misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE ALLEGATIONS

Verified Shareholder Derivative Complaint

148.    Plaintiff brings this action derivatively and for the benefit of Revolution Lighting to redress injuries suffered, and to be suffered, as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Revolution Lighting, waste of corporate assets, unjust enrichment, and violations of Sections 14(a) of the Exchange Act, as well as the aiding and abetting thereof.

149.    Revolution Lighting is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

150.    Plaintiff is, and has been continuously at all relevant times, a shareholder of Revolution Lighting. Plaintiff will adequately and fairly represent the interests of Revolution Lighting in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

## DEMAND FUTILITY ALLEGATIONS

151.    Plaintiff incorporates by reference and re-alleges each and every allegation stated above as if fully set forth herein.

152.    A pre-suit demand on the Board of Revolution Lighting is futile and, therefore, excused. At the time of filing of this action, the Board consists of the following five Individual Defendants: Defendants LaPenta, DePalma, Ingram, McCarthy, and Virtue (the "Directors"). Plaintiff needs only to allege demand futility as to three of the five Directors who were on the Board at the time this action was commenced.

153.    Demand is excused as to all of the Directors because each one of them faces, individually and collectively, a substantial likelihood of liability as a result of the scheme they engaged in knowingly or recklessly to make and/or cause the Company to make false and misleading statements and omissions of material facts, which renders them unable to impartially

investigate the charges and decide whether to pursue action against themselves and the other perpetrators of the scheme.

154.    In complete abdication of their fiduciary duties, the Directors either knowingly or recklessly participated in making and/or causing the Company to make the materially false and misleading statements alleged herein. The fraudulent scheme was, *inter alia*, intended to make the Company appear more profitable and attractive to investors. As a result of the foregoing, the Directors breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is futile, and thus excused.

155.    Additional reasons that demand on Defendant LaPenta is futile follow. Defendant LaPenta has served as the Company's CEO since September 2012, as a Company director since January 2013, and as the Company's President since July 2015. Defendant LaPenta is also a member and officer of RVL and Aston and is therefore a controlling shareholder of the Company. Thus, as the Company admits, he is a non-independent director. The Company provides Defendant LaPenta with his principal occupation. Because Defendant LaPenta is so invested in the Company through his beneficial ownership and connection with RVL and Aston, the Company determined additional compensation is unwarranted. Defendant LaPenta was ultimately responsible for all of the false and misleading statements and omissions that were made, including those contained in the foregoing press releases, most of which he personally made statements in, and the 2013, 2014, 2015, 2016, and 2017 10-Ks (the "10-Ks") which he signed and signed SOX certifications for. As the Company's highest officer, controlling shareholder, and as a trusted Company director, he conducted little, if any, oversight of the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Moreover, Defendant

LaPenta is a defendant in the Securities Class Actions. For these reasons, too, Defendant LaPenta breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon his is futile and, therefore, excused.

156.    Additional reasons that demand on Defendant DePalma is futile follow. Defendant DePalma has served as a Company director since September 2012 and as the Company's CFO since July 2015. Defendant DePalma is also a member and officer of RVL and Aston and is therefore a controlling shareholder of the Company. Thus, as the Company admits, he is a non-independent director. The Company provides Defendant DePalma with his principal occupation. Because Defendant DePalma is so invested in the Company through his beneficial ownership and connection with RVL and Aston, the Company determined additional compensation is unwarranted. Defendant DePalma was ultimately responsible for all of the false and misleading statements and omissions that were made, including the 2016, and 2017 10-Ks, which he signed SOX certifications for, and the 10-Ks, which he signed. As one of the Company's highest officers, controlling shareholder, and as a trusted Company director, he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Moreover, Defendant DePalma is a defendant in the Securities Class Actions. For these reasons, too, Defendant DePalma breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon his is futile and, therefore, excused.

157.    Additional reasons that demand on Defendant Ingram is futile follow. Defendant Ingram has served as a Company director since September 2012 and serves as Chair of the Compensation Committee and as a member of the Audit Committee and Nominating and

Corporate Governance Committee. Defendant Ingram receives handsome compensation, including $60,000 in fiscal year ended December 31, 2017. As a long-time Company director and member of the Audit Committee he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant Ingram signed, and thus personally made the false and misleading statements in, the 10-Ks. For these reasons, too, Defendant Ingram breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

158.    Additional reasons that demand on Defendant McCarthy is futile follow. Defendant McCarthy has served as a Company director since September 2012, and serves as Chair of the Audit Committee and a member of the Nominating and Corporate Governance Committee and the Compensation Committee. Defendant McCarthy receives handsome compensation, including $60,000 in the fiscal year ended December 31, 2017. As Chair of the Audit Committee and as a trusted Company director he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant McCarthy signed, and thus personally made the false and misleading statements in, the 10-Ks. For these reasons, too, Defendant McCarthy breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon him is futile and, therefore, excused.

159.    Additional reasons that demand on Defendant Virtue is futile follow. Defendant Virtue has served as a Company director since September 2012 and serves as Chair of the

Nominating and Corporate Governance Committee and as a member of the Audit Committee and the Compensation Committee. Defendant Virtue receives handsome compensation, including $60,000 in the fiscal year ended December 31, 2017. As a trusted Company director and member of the Audit Committee he conducted little, if any, oversight of the Company's engagement in the scheme to make false and misleading statements, consciously disregarded his duties to monitor such controls over reporting and engagement in the scheme, and consciously disregarded his duties to protect corporate assets. Furthermore, Defendant Virtue signed, and thus personally made the false and misleading statements in, the 10-Ks. For these reasons, too, Defendant Virtue breached his fiduciary duties, faces a substantial likelihood of liability, is not independent or disinterested, and thus demand upon his is futile and, therefore, excused.

160.   Additional reasons that demand on the Board is futile follow.

161.   Demand in this case is excused because the Directors, all of whom are named as defendants in this action, control the Company and are beholden to each other. The Directors have longstanding business and personal relationships with each other and the other Individual Defendants that preclude them from acting independently and in the best interests of the Company and the shareholders. These conflicts of interest precluded the Directors from adequately monitoring the Company's operations and internal controls and calling into question the Individual Defendants' conduct. Thus, any demand on the Directors would be futile.

162.   For example, the Directors are beholden to and controlled by RVL and Aston—and thus, Defendants LaPenta and DePalma—by virtue of RVL's and Aston's share ownership, representing 38.35% of the Company's outstanding common stock as of March 1, 2018 (the "Controlling Shareholder Group"). These shareholdings provide the Controlling Shareholder Group with significant control over the continued employment of the remaining Directors. All of

the Directors are also beholden to the Controlling Shareholder Group because of the compensation they receive as Directors. Furthermore, Defendants LaPenta and DePalma are officers of RVL, Aston, and Revolution Lighting and thus, as the Company admits are non-independent directors. Indeed, Defendants LaPenta and DePalma are dependent on themselves as members of the Controlling Shareholder Group and as the Company's executive officers. Furthermore, the Company is intertwined in multiple transactions with the Controlling Shareholder Group, including through debt-financing agreements. The Company additionally shares its corporate office space with Aston and paid $0.3 m during fiscal years ended Dec 31, 2017, 2016, and 2015 to Aston in connection thereto. Therefore, the Directors are unable to consider a demand with the requisite level of disinterestedness.

163.    Demand is excused as to Defendants Ingram, McCarthy, and Virtue, because they were appointed by, and beholden to, RVL and Defendants LaPenta and DePalma pursuant to the Investment Agreement entered into on September 12, 2012 between RVI and the Company, which required all members of the Company's prior Board to hand in letters of resignation.

164.    Thus, the Directors are unable to evaluate a demand with independence as a result of the Controlling Shareholder Group's control over them, and their being beholden to them, therefore demand is excused as to all of the Directors.

165.    Defendants Ingram, McCarthy, and Virtue (the "Audit Committee Defendants") also served as members of the Audit Committee during the Relevant Period. Pursuant to the Audit Committee Charter, the Audit Committee Defendants bear responsibility for, *inter alia*, the effectiveness of the Company's internal controls, the integrity of its financial statements, and its compliance with laws and regulations. The Audit Committee Defendants failed to ensure the integrity of the Company's internal controls, as they are charged to do under the Audit Committee

Charter, allowing the Company to issue false and misleading press releases and file false and misleading financial statements with the SEC. Thus, the Audit Committee Defendants breached their fiduciary duties, are not disinterested, and demand is excused as to them.

166.     In violation of the Code of Conduct, the Directors conducted little, if any, oversight of the Company's internal controls over public reporting and of the Company's engagement in the Individual Defendants' scheme to issue materially false and misleading statements to the public, and facilitate and disguise the Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment, and violations of the Exchange Act. In violation of the Code of Conduct, the Directors failed to comply with the law. Thus, the Directors face a substantial likelihood of liability and demand is futile as to them.

167.     Revolution Lighting has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Directors have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for Revolution Lighting any part of the damages Revolution Lighting suffered and will continue to suffer thereby. Thus, any demand upon the Directors would be futile.

168.     The Individual Defendants' conduct described herein and summarized above could not have been the product of legitimate business judgment as it was based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Directors can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). As a majority of the Directors face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising independent and disinterested judgment about whether to pursue this action on behalf of the shareholders of the Company. Accordingly, demand is excused as being futile.

169.    The acts complained of herein constitute violations of fiduciary duties owed by Revolution Lighting officers and directors, and these acts are incapable of ratification.

170.    The Directors may also be protected against personal liability for their acts of mismanagement and breaches of fiduciary duty alleged herein by directors' and officers' liability insurance if they caused the Company to purchase it for their protection with corporate funds, i.e., monies belonging to the stockholders of Revolution Lighting. If there is a directors' and officers' liability insurance policy covering the Directors, it may contain provisions that eliminate coverage for any action brought directly by the Company against the Directors, known as, *inter alia*, the "insured-versus-insured exclusion." As a result, if the Directors were to sue themselves or certain of the officers of Revolution Lighting, there would be no directors' and officers' insurance protection. Accordingly, the Directors cannot be expected to bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage, if such an insurance policy exists, will provide a basis for the Company to effectuate a recovery. Thus, demand on the Directors is futile and, therefore, excused.

171.    If there is no directors' and officers' liability insurance, then the Directors will not cause Revolution Lighting to sue the Individual Defendants named herein, since, if they did, they would face a large uninsured individual liability. Accordingly, demand is futile in that event, as well.

172.    Thus, for all of the reasons set forth above, all of the Directors, and, if not all of them, at least three of the Directors, cannot consider a demand with disinterestedness and independence. Consequently, a demand upon the Board is excused as futile.

## **FIRST CLAIM**

### **Against Individual Defendants for Violations of Section 14(a) of the Exchange Act**

173.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

174.    The Section 14(a) Exchange Act claims alleged herein are based solely on negligence. They are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants. The Section 14(a) claims alleged herein do not allege and do not sound in fraud. Plaintiff specifically disclaims any allegations of, reliance upon any allegation of, or reference to any allegation of fraud, scienter, or recklessness with regard to these nonfraud claims.

175.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides that "[i]t shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

176.    Rule 14a-9, promulgated pursuant to § 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

177.    Under the direction and watch of the Directors, the 2017 and 2018 Proxy Statements failed to disclose, *inter alia* that: (1) Revolution Lighting was improperly recording revenue for certain transactions, primarily bill and hold transactions, at the proper time, rendering

the Company's financial statements from 2014 through the second quarter of 2018 false; (2) the Company had deficient internal controls over financial reporting; (3) Revolution Lighting was or would become the subject of an SEC investigation and experience substantial costs, and; (4) the Company failed to maintain internal controls.

178.    The 2017 and 2018 Proxy Statements stated that the Company has adopted a Code of Conduct that applies to anyone who works for or represents Revolution Lighting, including "the members of our Board of Directors and all employees, including (but not limited to) our principal executive officer, principal financial officer, principal accounting officer or controller and persons performing similar functions."

179.    The 2017 and 2018 Proxy Statements were also false and misleading because, despite assertions to the contrary, Revolution Lighting's Code of Conduct was not followed, as the Individual Defendants made and/or caused the Company to make the false and misleading statements discussed herein and failed to report violations of the Code of Conduct.

180.    In the exercise of reasonable care, the Individual Defendants should have known that by misrepresenting or failing to disclose the foregoing material facts, the statements contained in the 2017 and 2018 Proxy Statements were materially false and misleading. The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for shareholder determination in the 2017 and 2018 Proxy Statements, including, but not limited to, election of directors, ratification of an independent auditor, and the approval of executive compensation.

181.    The false and misleading elements of the 2017 and 2018 Proxy Statements led to the re-election of Defendants Lapenta, DePalma, Ingram, McCarthy, and Virtue, which allowed them to continue breaching their fiduciary duties to Revolution Lighting.

182.    The Company was damaged as a result of the Individual Defendants' material misrepresentations and omissions in the 2017 and 2018 Proxy Statements.

183.    Plaintiff on behalf of Revolution Lighting has no adequate remedy at law.

## SECOND CLAIM

### Against Individual Defendants for Breach of Fiduciary Duties

184.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

185.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Revolution Lighting's business and affairs.

186.    Each of the Individual Defendants violated and breached his or her fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

187.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Revolution Lighting.

188.    In breach of their fiduciary duties, the Individual Defendants knowingly or recklessly caused the Company to misstate material financial information to the public for almost four entire years, subjected the Company to an SEC investigation, and further caused resulting costs and delays in the Company's financial reporting indicating that the Company had lax or non-existent financial reporting controls and disclosure policies and protocols, and that the Company's internal controls and procedures related to financial reporting were ultimately inadequate and ineffective.

189.     Also in breach of their fiduciary duties, the Individual Defendants failed to conduct adequate due diligence over the Company's internal controls over financial reporting and disclosure, causing them to fail to discover and timely correct numerous errors related to recording certain transactions.

190.     In further breach of their fiduciary duties, the Individual Defendants failed to maintain an adequate system of oversight, disclosure controls and procedures, and internal controls.

191.     Also in breach of their fiduciary duties owed to Revolution Lighting, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements that failed to disclose, *inter alia*, that: (1) Revolution Lighting was improperly recording revenue for certain transactions, primarily bill and hold transactions, at the proper time, rendering the Company's financial statements from 2014 through the second quarter of 2018 false; (2) the Company had deficient internal controls over financial reporting; (3) Revolution Lighting was or would become the subject of an SEC investigation and experience substantial costs, and; (4) the Company failed to maintain internal controls. As a result of the foregoing, Defendants' statements regarding the Company's business, operations, and prospects, were materially false, misleading, and lacked a reasonable basis in fact at all relevant times.

192.     The Individual Defendants failed to correct and/or caused the Company to fail to rectify any of the wrongs described herein or correct the false and/or misleading statements and omissions of material fact referenced herein, rendering them personally liable to the Company for breaching their fiduciary duties.

193.     The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public

statements. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and omissions were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities.

194.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein and to fail to maintain adequate internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent schemes and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the schemes alleged herein and to prevent them from continuing to occur.

195.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

196.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Revolution Lighting has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

197.    Plaintiff on behalf of Revolution Lighting has no adequate remedy at law.

## THIRD CLAIM

### Against Individual Defendants for Unjust Enrichment

198.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

199.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made and/or caused to be made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Revolution Lighting.

200.    The Individual Defendants either benefitted financially from the improper conduct by receiving bonuses, stock options, or similar compensation from Revolution Lighting that was tied to the performance or artificially inflated valuation of Revolution Lighting or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

201.    Plaintiff, as a shareholder and a representative of Revolution Lighting, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits—including from insider sales, benefits, and other compensation, including any performance-based or valuation-based compensation—obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary duties.

202.    Plaintiff on behalf of Revolution Lighting has no adequate remedy at law.

## FOURTH CLAIM

### Against Individual Defendants for Waste of Corporate Assets

203.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

204.    As a further result of the foregoing, the Company will incur many millions of dollars of legal liability and/or costs to defend unlawful actions, to engage in internal

investigations, and to lose financing from investors and business from future customers who no longer trust the Company and its products.

205.    As a result of the waste of corporate assets, the Individual Defendants are each liable to the Company.

206.    Plaintiff on behalf of Revolution Lighting has no adequate remedy at law.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Revolution Lighting, and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Revolution Lighting;

(c)    Determining and awarding to Revolution Lighting the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

(d)    Directing Revolution Lighting and the Individual Defendants to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Revolution Lighting and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Articles of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

1. a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and

guidelines of the Board;

      2.  a provision to permit the shareholders of Revolution Lighting to nominate at least three candidates for election to the Board; and

      3.  a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations.

      (e)     Awarding Revolution Lighting restitution from Individual Defendants, and each of them;

      (f)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

      (g)     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: April 26, 2019

                                    Respectfully submitted,

                                    **SHAPIRO LAW OFFICES, LLC**

                                    By: /s/ Jonathan M. Shapiro
                                    Jonathan M. Shapiro (ct24075)
                                    32 Washington Street
                                    Middletown, CT 06457
                                    Telephone: (860) 347-3325
                                    Facsimile: (860) 347-3874
                                    Email: jshapiro@shapirolawofficesct.com

                                    **THE BROWN LAW FIRM, P.C.**
                                    Timothy Brown
                                    240 Townsend Square
                                    Oyster Bay, NY 11771
                                    Telephone: (516) 922-5427
                                    Facsimile: (516) 344-6204
                                    Email: tbrown@thebrownlawfirm.net

                                    *Counsel for Plaintiff*

## **VERIFICATION**

I, Bill Jenkins, am a plaintiff in the within action. I have reviewed the allegations made in this shareholder derivative complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _th day of _____, 2019.

4/25/2019

DocuSigned by:

*Bill Jenkins*

6F056C64495843C...

Bill Jenkins